# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE | : | |
| | : | |
| v. | : | I.D. No.: 1604019780 |
| | : | |
| DAIQUAN BORDLEY, | : | |
| | : | |
| Defendant. | : | |

Submitted:  December 23, 2025
Decided: March 30, 2026

## MEMORANDUM OPINION AND ORDER

*Upon Defendant's Motion for Postconviction Relief – GRANTED*

Kathryn J. Garrison, Esquire, Deputy Attorney General, Dover, Delaware. *Attorney for the State of Delaware.*

Patrick J. Collins, Esquire, Collins Price Warner Woloshin, Wilmington, Delaware, *for Defendant Daiquan Bordley*.

**GREEN-STREETT, J.**

## I.   Introduction

Facing several felony charges, including Murder in the First Degree, a defendant waived his right to a jury trial and proceeded to a bench trial. Before making that waiver, the defendant's attorney advised him a bench trial would be advantageous, as the attorney enjoyed a social relationship with the trial judge. As trial counsel's representation fell below an objective standard of reasonableness and deprived the defendant of the ability to exercise his constitutional right to a jury trial, the Motion for Postconviction Relief is **GRANTED**.

## II.   Factual and Procedural Background

### A.   Mr. Bordley's conviction and direct appeal

On July 5, 2016, a grand jury indicted Daiquan Bordley on charges of Murder in the First Degree, Robbery in the First Degree, Possession of a Firearm During the Commission of a Felony, and Conspiracy in the Second Degree.[1] Those charges stemmed from an alleged plan by Mr. Bordley and a co-defendant, Chelsea Braunskill, to rob Dontray Hendricks.[2] Ms. Braunskill contacted Mr. Hendricks stating she wanted to purchase marijuana and smoke with him.[3] Ms. Braunskill, Mr.

---

[1] Bordley v. State, 224 A.3d 575 (Del. 2020) (TABLE); D.I. 2 (July 5, 2016).

[2] Id.

[3] Id.

2

Hendricks, and Ms. Braunskill's roommate, Alexis Golden, drove to the Port Mahon pier.[4]

Approximately ten to fifteen minutes after they arrived at the pier, Mr. Bordley; another co-defendant named Zhyree Harmon; and Christopher Gartner-Hunter, Mr. Harmon's brother-in-law; arrived in Mr. Bordley's vehicle.[5] Those individuals present at the pier disagree about what happened next. Their accounts at trial reflect that disagreement.

Ms. Golden stated Mr. Bordley and Mr. Hendricks engaged in a tussle.[6] Mr. Harmon described any altercation between Mr. Bordley and Mr. Hendricks as wrestling.[7] Ms. Braunskill testified Mr. Bordley "walked straight up and shot [Mr. Hendricks]."[8] After allegedly shooting Mr. Hendricks, Mr. Bordley left in his vehicle with Mr. Harmon and Mr. Gartner-Hunter.[9] Ms. Braunskill and Ms. Golden left in Mr. Hendricks's vehicle.[10] Mr. Hendricks died from his injuries.[11]

---

[4] Id.

[5] Id.

[6] Id.

[7] Id.

[8] Id.

[9] Id.

[10] Id.

[11] Id.

Mr. Bordley proceeded to a bench trial.[12]  Mr. Bordley's co-defendants, Mr. Harmon and Ms. Braunskill, resolved their respective charges by accepting plea offers from the State.[13]  At trial, the State called Detective Robert Daddio;[14] Mr. Harmon;[15]  Ms. Golden;[16] Ms. Braunskill;[17] Kevin Cottle, a paramedic who responded to the scene;[18] Dr. Gary Collins, the chief medical examiner at the Delaware Division of Forensic Science;[19] and Detective Daniel Grassi.[20]  Mr. Bordley testified, and called two additional witnesses of his own: Janaid Kareem, Mr. Hendricks's brother;[21] and Mr. Gartner-Hunter.[22]  After Mr. Gartner-Hunter took the witness stand, the State requested a colloquy advising him of his right to remain

---

[12] Id.

[13] D.I. 162, Am. Mot. for Postconviction Relief at 18, 26 (Jan. 9, 2024).

[14] Id. at 11.

[15] Id. at 12.

[16] Id. at 19.

[17] Id. at 24.

[18] Id. at 30.

[19] Id. at 31.

[20] Id. at 32.

[21] Id. at 40.

[22] Id. at 34.

silent because it still considered him a potential suspect.[23] The trial judge permitted Mr. Gartner-Hunter to leave the witness stand to consult with counsel, and he never retook the witness stand or offered any testimony.[24]

The trial judge convicted Mr. Bordley on all counts.[25] Mr. Bordley filed a timely appeal to the Delaware Supreme Court, arguing that (1) his due process rights were violated by prosecutorial misconduct; (2) the trial judge improperly admitted unauthenticated text messages; and (3) the trial judge improperly failed to consider whether notes written by Mr. Harmon impeached his testimony.[26] The Delaware Supreme Court found no merit to Mr. Bordley's contentions, upholding his conviction on January 7, 2020.[27]

### B. Mr. Bordley's postconviction proceedings

Mr. Bordley filed a Motion for Postconviction Relief, *pro se*, on December 14, 2020.[28] He asserted three grounds of ineffective assistance of counsel relating to his trial counsel's ("Trial Counsel") performance: (1) Trial Counsel failed to

---

[23] Id.

[24] Id.

[25] Bordley, 224 A.3d at 575.

[26] Id.

[27] Id.

[28] D.I. 119 (Dec. 14, 2020).

5

request a lesser-included offense; (2) Trial Counsel failed to call an expert witness to introduce doubt about the authenticity of text messages attributed to Mr. Bordley; and (3) Trial Counsel failed to object to the introduction of those text messages.[29] At that time, Mr. Bordley also filed a motion requesting the appointment of postconviction counsel.[30] The Court granted Mr. Bordley's request for appointment of postconviction counsel on December 18, 2020.[31]

Before the Court appointed postconviction counsel, Mr. Bordley retained private postconviction counsel ("Prior Postconviction Counsel").[32] Prior Postconviction Counsel submitted a typed, filled-in version of the postconviction form typically utilized by *pro se* filers.[33] Prior Postconviction Counsel asserted eight grounds of ineffective assistance of counsel: (1) Trial Counsel improperly advised Mr. Bordley to proceed with a bench trial; (2) Trial Counsel failed to have notes written by one of Mr. Bordley's co-defendants analyzed by a handwriting expert;[34]

---

[29] Id.

[30] D.I. 120 (Dec. 14, 2020).

[31] D.I. 122 (Dec. 18, 2020).

[32] D.I. 123 (Jan. 5, 2021) (Motion for Postconviction Relief filed by Prior Postconviction Counsel); D.I. 125 (Jan. 6, 2021 (Court Order vacating its prior Order to appoint postconviction counsel).

[33] D.I. 123.

[34] The motion did not specify which of Mr. Bordley's co-defendants wrote the notes in question. Presumably, they are the notes allegedly given to Mr. Bordley by Mr. Harmon while the two were incarcerated together awaiting trial.

(3) Trial Counsel failed to introduce prior statements given by Ms. Golden; (4) Trial Counsel failed to object to evidence implicating Mr. Bordley in other crimes; (5) Trial Counsel "failed to present a coherent theory as to how the shooting occurred;" (6) Trial Counsel "failed to follow up on proposed exculpatory testimony of one Mr. Gartner-Hunter after witness declined to testify based on a fear of potential prosecution;" (7) Trial Counsel failed to object to the admission of text messages purportedly between Mr. Bordley and Ms. Braunskill; and (8) no investigation occurred regarding Mr. Gartner-Hunter's status as a potential suspect – a status which allegedly prevented him from testifying.[35]

On April 22, 2021, Prior Postconviction Counsel filed a Motion to Withdraw as Counsel, stating Mr. Bordley's family failed to compensate him for his representation.[36] Prior Postconviction Counsel withdrew that motion on May 2, 2021.[37] The State filed a response to the First Motion for Postconviction Relief on July 23, 2021.[38] A Commissioner of this Court issued a report recommending the

---

[35] D.I. 123 (Jan. 5, 2021) (the "First Motion for Postconviction Relief").

[36] D.I. 130 (Apr. 22, 2021).

[37] D.I. 137 (May 2, 2021).

[38] D.I. 141 (Jul. 23, 2021).

Court deny all of Mr. Bordley's claims.[39] Prior Postconviction Counsel did not file any objections to that report.

On May 11, 2022, Mr. Bordley filed a letter with the Court, stylized as a "Motion Reporting Abandonment of Counsel," informing the Court that Prior Postconviction Counsel ceased representing Mr. Bordley, and failed to file any exceptions to the report issued by the Commissioner.[40] On May 24, 2022, the Delaware Supreme Court denied Mr. Bordley's *pro se* direct appeal of the Commissioner's recommendations for lack of jurisdiction.[41] Mr. Bordley filed a *pro se* "Opening Brief in support of his Appeal of Commissioner' [sic] Order."[42] In that filing, Mr. Bordley alleged a complete breakdown in his communication with Prior Postconviction Counsel.[43]

On August 17, 2022, the Court received an email from the Office of Conflicts Counsel informing the Court Mr. Bordley contacted that office requesting representation in his postconviction proceedings.[44] The email explained the Office

---

[39] D.I. 144 (Apr. 11, 2022).

[40] D.I. 146 (May 11, 2022).

[41] D.I. 147 (Jun. 6. 2022); Bordley v. State, 277 A.3d 1257 (Del. 2022) (TABLE).

[42] D.I. 148 (Aug. 1, 2022).

[43] Id. at 16-17.

[44] D.I. 149 (Aug. 17, 2022).

of Conflicts Counsel contacted Prior Postconviction Counsel, and confirmed he no longer represented Mr. Bordley.[45] Accordingly, the Office of Conflicts Counsel assigned new postconviction counsel to Mr. Bordley ("Postconviction Counsel").[46]

After his assignment to Mr. Bordley's case, Postconviction Counsel requested a stay of the proceedings to allow time to conduct a full review of the record.[47] The State did not oppose that request.[48] The Court granted a stay of the proceedings until November 30, 2022.[49] On November 21, 2022, Postconviction Counsel filed a "Motion to Vacate Commissioner's Report and Recommendations and Permit Amendment to Motion for Postconviction Relief."[50] The State filed a Reply, arguing the Court should deny Mr. Bordley's request to amend his Motion for Postconviction Relief.[51] On February 6, 2023, the Court granted Mr. Bordley's Motion to Amend his Motion for Postconviction Relief, and remanded the matter back to the Commissioner.[52]

---

[45] Id.

[46] Id.

[47] D.I. 150, Mot. for a Stay of Postconviction Proceedings (Aug. 18, 2022).

[48] Id. at 5-6.

[49] D.I. 151 (Aug. 19, 2022).

[50] D.I. 153 (Nov. 21, 2022).

[51] D.I. 154 (Dec. 1, 2022).

[52] D.I. 155 (Feb. 6, 2023).

Mr. Bordley filed an Amended Motion for Postconviction Relief on January 9, 2024.  He asserted three grounds for ineffective assistance of counsel: (1) Trial Counsel violated Mr. Bordley's constitutional right to a jury trial by advising him Trial Counsel maintained a friendly relationship with the trial judge and could expect favorable rulings; (2) Trial Counsel's performance during trial fell below an objective standard of reasonableness; and (3) Trial Counsel failed to communicate any plea offers to Mr. Bordley.[53]  He requested an evidentiary hearing to substantiate those claims further.[54]

The State filed its Response on May 21, 2024, disputing Mr. Bordley's claims regarding Trial Counsel's performance during trial and the alleged failure to communicate any plea offers.[55]  As to Mr. Bordley's allegation regarding Trial Counsel's intimation  of an advantageous social relationship with the trial judge, the State agreed an evidentiary hearing would be beneficial.[56]  The Commissioner held evidentiary hearings on September 24 and 25, 2024.[57]  Trial Counsel, Mr. Bordley,

---

[53] Am. Mot. for Postconviction Relief at 51, 57, 66.

[54] Id. at 74.

[55] D.I. 171 (May 21, 2024).

[56] Id. at 14.

[57] D.I. 181 (hereinafter, "Tr of Ev. Hr'g at ___") (as the evidentiary hearing spanned two days, there are two separate transcripts.  Citations to "A___" will denote citations to the first day, citations to "B___" will denote citations to the second day).

and Michael Fontello, an investigator who assisted Trial Counsel with Mr. Bordley's case, testified.[58]

At the evidentiary hearing, Trial Counsel denied ever stating he maintained a social relationship with the trial judge.[59]  He testified his practice involved having investigators observe meetings between him and his clients to take notes.[60]  He did not recall any meeting between himself, the two investigators he employed, and Mr. Bordley wherein the four men took a vote on whether to proceed to a jury or bench trial.[61]  Trial Counsel further testified he believed Mr. Bordley wanted a bench trial because, "he didn't have to convince 12 people for the acquittal.  He just had to convince one person."[62]  Trial Counsel also stated, "I explained to Mr. Bordley that it's his choice, he gets to make that choice, and I can't tell him what to do.  *I can't even advise him what to do*."[63]  He denied having any personal relationship with the trial judge.[64]

---

[58] Id.

[59] Id. at A17.

[60] Id. at A9-10.

[61] Id. at A21-22.

[62] Id. at A19.

[63] Id. (emphasis added).

[64] Id. at A53.

Regarding his decision not to introduce evidence of Mr. Bordley's co-defendants' cooperation agreements with the State to testify against Mr. Bordley, Trial Counsel testified:

> So we weren't in front of a jury. We were in front of a judge. I believe that the judge was well versed in co-defendant's statements. So it wasn't necessary to actually submit [ ] cooperation agreements to the Court. I don't think it would have impacted one way or another. And I think the Court was already aware of the co-defendants' pleas.[65]

When asked if the Court could consider those pleas, even though they were outside the record, Trial Counsel opined the trial judge could have taken judicial notice of them.[66] He conceded, however, that he did not ask the trial judge to take judicial notice of co-defendants' cooperation agreements.[67]

Mr. Bordley testified he initially planned to proceed with a jury trial.[68] However, he explained that Trial Counsel advised, "he was close friend[s] with the judge, and he felt as though the trial would be more in our favor due to their personal

---

[65] Id. at A39-40.

[66] Id. at A40-41.

[67] Id. at A41.

[68] Id. at A61.

12

relationship.  No [sic] only that but, also, as he said, certain evidence would be able to get in easier without certain parameters [ ] with that judge."[69]

Mr. Bordley also testified about a meeting on the eve of trial when he met with Trial Counsel and two investigators to discuss whether to waive his right to a jury trial.[70]  He recalled that Mr. Fontello and himself voted for a jury trial, while Trial Counsel and the other investigator, Robert Workman, voted for a bench trial.[71]  Mr. Bordley stated Trial Counsel told him that the decision to waive his right to a jury trial must be made by Mr. Bordley, but Trial Counsel "was adamant that we should go to trial by judge because  [Trial Counsel] was more comfortable that way to present the case.  Not only with the being friends [sic] with the judge."[72]

Mr. Fontello recalled the meeting in which they voted on whether Mr. Bordley should opt for a bench trial.[73]  He testified that Mr. Bordley had not expressed, at least in front of Mr. Fontello, any preference for a jury or bench trial before that

---

[69] Id. at A62.

[70] Id. at A64.

[71] Id.

[72] Id. at A65-66.

[73] Id. at B10-12.

meeting.[74]  Mr. Fontello testified, "[Trial Counsel] recommended a judge trial."[75]

When asked what Trial Counsel's reasons were, Mr. Fontello recalled:

> He explained that he felt he had a relationship with the judge.  In fact, he had a social type of relationship, and he didn't go into particulars, with the judge and that he could get better judgments, meaning more evidence in [sic].  I would believe is [sic] what he was talking about.  And with this, I guess it was left at that.  That was all that was basically said.

Mr. Fontello could not recall any other reasons Trial Counsel provided for recommending a bench trial.[76]  Mr. Fontello testified Trial Counsel suggested they vote on how to proceed.[77]  Mr. Fontello explained he did not view a bench trial as a viable option, and that "this – it should have been a jury trial."[78]  In Mr. Fontello's recollection of the vote, Trial Counsel, Mr. Workman, and Mr. Bordley voted for a bench trial.[79]  He testified Mr. Bordley "was very agreeable[,] and I think he was definitely swayed by [Trial Counsel's] statements that he was making."[80]

---

[74] Id. at B12.

[75] Id. at B13.

[76] Id. at B14.

[77] Id. at B14-15.

[78] Id. at B15.

[79] Id.

[80] Id. at B16.

After the evidentiary hearing, Mr. Bordley submitted an affidavit from Mr. Workman.[81]  Mr. Workman averred that he recalled the meeting in which the four men voted on whether to proceed to a bench trial.[82]  Mr. Workman stated that, initially, Trial Counsel "was in favor of going to a bench trial with the judge assigned to this case."[83]  Mr. Workman offered that, "after listening to [Trial Counsel's] opinion and reasoning and[,] in combination with all our investigative findings, I was still in favor of going to trial by and with this judge."[84]  He could not recall, however, what Trial Counsel's reasons were.[85]

Additionally, Mr. Workman indicated he located his notes from that meeting.[86] Under the heading "ESQ Discussing Bench vs. Jury," Mr. Workman wrote, "Judge is [sic]."[87]  Mr. Workman later crossed that note out, and averred, "my recollection is that I believe whatever [Trial Counsel] was specifically expressing to Bordley about the judge shouldn't have been documented in our notes."[88]  Mr. Workman

---

[81] D.I. 182 (Oct. 23, 2024).

[82] Id. at 2.

[83] Id.

[84] Id.

[85] Id.

[86] Id.

[87] Id.

[88] Id.

concluded, "the decision to go to trial by judge wasn't a vote or group decision. Bordley decided to go to trial."[89]

The State filed its "Supplement After Evidentiary Hearing in Response to Defendant's Amended Motion for Postconviction Relief" on November 25, 2024.[90] Mr. Bordley filed a Reply on December 27, 2024.[91] The Commissioner issued her Report and Recommendation (the "Report") on April 30, 2025.[92] The Report recommended denying all of Mr. Bordley's claims.[93]

Mr. Bordley filed his Appeal to the Report on June 13, 2025.[94] The State filed its Response on July 2, 2025.[95] The Court held oral argument on this matter on November 21, 2025.[96]

---

[89] Id. at 3.

[90] D.I. 183 (Nov. 25, 2024).

[91] D.I. 184 (Dec. 27, 2024).

[92] D.I. 187 (Apr. 30, 2025).

[93] Id. at 36-37.

[94] D.I. 190 (June 13, 2025) (after the evidentiary hearing, Mr. Bordley abandoned his claim related to Trial Counsel's alleged failure to communicate a plea offer).

[95] D.I. 194 (July 2, 2025).

[96] Tr. of Oral Arg. (D.I. 197) (Nov. 21, 2025) (hereinafter, "Tr. of OA at __").

## III. Rule 61's Procedural Requirements

This Court must consider the procedural requirements of Superior Court Criminal Rule 61 before addressing the merits of Mr. Bordley's claims.[97] Those procedural requirements are "timeliness, repetitiveness, procedural default, and former adjudication."[98] Rule 61(i)(3) further requires "[a]ny ground for relief that was not asserted in the proceedings leading to the judgment of conviction, as required by the rules of this court, is thereafter barred, unless the movant shows ... [c]ause for relief from the procedural default and ... [p]rejudice from violation of the movant's rights." Claims based on ineffective assistance of counsel, however, cannot be raised on direct appeal. Accordingly, Rule 61(i)(3) rarely applies to claims founded on ineffective assistance of counsel.[99]

Mr. Bordley filed his initial Motion for Postconviction Relief within one year of the Delaware Supreme Court affirming his conviction. Thereafter, the Court granted his request to amend his postconviction motion. Thus, his Amended Motion for Postconviction Relief qualifies as timely and non-repetitive. As he asserts claims of ineffective assistance of counsel, his claims are not barred by Rule 61(i)(3).

---

[97] Younger v. State, 580 A.2d 552, 554 (Del. 1990).

[98] State v. Stanford, 2017 WL 2484588, at *2 (Del. Super. June 7, 2017).

[99] State v. Coverdale, 2018 WL 259775, at *2 (Del. Super. Jan. 2, 2018) (citing State v. Smith, 2017 WL 2930930, at *1 (Del Super. July 7, 2017)).

17

Further, none of his claims have been previously adjudicated. Accordingly, the Court will consider the merits of Mr. Bordley's claims.

## IV. Analysis

### A. The Court rejects the Report

Under Superior Court Criminal Rule 62(a)(5)(iv), once a party objects to a Commissioner's report, this Court must conduct a *de novo* review of all portions of the report to which there are objections. The Court "may accept, reject, or modify, in whole or in part, the findings of fact or recommendations made by the Commissioner."[100] As Mr. Bordley objected to the entirety of the Report, this Court must review the entire Report *de novo*.

Mr. Bordley first argues that the Report misapplies the procedural bar of Rule 61(i)(3).[101] Although the Report did not find any section of Rule 61 procedurally barred Mr. Bordley's claim, the Report does recite language[102] that appears to conflate the requirements of Rule 61(i)(3) – requirements generally inapplicable to ineffective assistance of counsel claims – with the two-part analysis prescribed in Strickland v. Washington.[103] During oral argument, the State agreed that the Report

---

[100] Super. Ct. Crim. R. 62(a)(5)(iv).

[101] Appeal from Commissioner's Findings of Fact and Recommendations at 4-5.

[102] Report at 16.

[103] 466 U.S. at 668 (1984).

incorrectly describes the interplay between Rule 61(i)(3) and ineffective assistance of counsel claims.[104] Further, it appears this language has previously been highlighted as applying an incorrect legal standard in reviews of previous reports by the Commissioner.[105] Accordingly, the Court must reject that portion of the Report.

Mr. Bordley next asserts "much of the Commissioner's Report's legal reasoning is copied *verbatim* from the State's Supplemental Brief."[106] A review of the Report largely confirms Mr. Bordley's assertion. Even if the Court were to agree with the State's arguments, a motion for postconviction relief requires this Court to engage meaningfully with the petitioner's arguments beyond simply adopting the State's position. As explained, *supra*, the Court does not agree with the State's position or arguments. Thus, the Court must also reject the Report's legal analysis and conclusions.

### B.   **Strickland guides the Court's analysis**

When analyzing claims of ineffective assistance of counsel, this Court applies the two-part test set forth in <u>Strickland v. Washington</u>.[107] Mr. Bordley must first

---

[104] Tr. of OA at 41-42 ("My understanding in reading [the Commissioner's] decision was that she used that standard that she has typically used in other decisions where she talks about Rule 61(i)(3) and about the fact that it can trump ineffective assistance of counsel claims, which is not correct.").

[105] <u>See</u> <u>Green v. State</u>, 238 A.3d 160, 175 (Del. 2020); <u>Scott v. State</u>, 326 A.3d 653 (Del. 2024).

[106] Appeal from Commissioner's Findings of Fact and Recommendations at 14 (emphasis original).

[107] <u>Green</u>, 238 A.3d at 174.

show Trial Counsel's performance fell below an objective standard of reasonableness.[108] Second, he must demonstrate Trial Counsel's deficient performance caused him substantial prejudice.[109]

For the first prong – the "performance prong" – Mr. Bordley bears the burden of showing Trial Counsel's performance "was objectively unreasonable, *i.e.*, that no reasonable lawyer would have conducted the defense" as Trial Counsel did.[110] This standard affords Trial Counsel substantial deference, as "it is not this Court's function to second-guess reasonable trial tactics."[111] Further, "the relevant question is not whether counsel's choices were strategic, but whether they were reasonable."[112]

Mr. Bordley must also demonstrate Trial Counsel's deficient performance caused him substantial prejudice.[113] In the context of performance at trial, "[t]his [standard] requires showing that counsel's errors were so serious as to deprive the

---

[108] Id. (citing Strickland, 466 U.S. at 687-88).

[109] Id. (citing Strickland, 466 U.S. at 687-88).

[110] Id.

[111] State v. Drummond, 2002 WL 524283, at *1 (Del. Super. Apr. 1, 2002), aff'd, 803 A.2d 427 (Del. 2002).

[112] Green, 238 A.3d at 174 (internal quotations omitted) (quoting Roe v. Flores-Ortega, 528 U.S. 470, 481 (2000)).

[113] Strickland, 466 U.S. at 687-88.

defendant of a fair trial, a trial whose result is reliable."[114]  "Where a defendant claims ineffective assistance based on a pre-trial process that caused him to forfeit a constitutional right, the proper prejudice inquiry is whether the defendant can demonstrate a reasonable probability that, but for counsel's ineffectiveness, he would have opted to exercise that right."[115]  If Mr. Bordley fails to satisfy either prong of the Strickland analysis, the Court may dispose of the claim without addressing the other prong.[116]

### C. Trial Counsel's statement regarding his relationship with the trial judge violated Mr. Bordley's constitutional rights

Mr. Bordley's first claim centers on Trial Counsel's advice regarding Mr. Bordley's decision to waive his right to a jury trial.  Mr. Bordley alleges Trial Counsel (1) advised him to proceed with a bench trial because of a social relationship between Trial Counsel and the trial judge; and (2) intimated he would have an easier time getting evidence admitted.[117]  Mr. Bordley asserts that advice improperly induced him to waive his right to a jury trial.[118]

---

[114] Id.

[115] Wheeler v. State, 296 A.3d 363, 376 (Del. 2023) (internal quotations omitted) (quoting Vickers v. Superintendent Graterford SCI, 858 F.3d 841 (3d Cir. 2017)).

[116] Green, 238 A.3d at 174–75.

[117] Am. Mot. for Postconviction Relief at 54.

[118] Id.

Trial Counsel denied ever suggesting he maintained a social relationship with the trial judge – or that such a relationship and any associated partiality would contribute to a favorable outcome at trial.[119] Trial Counsel testified he remembered a meeting between Mr. Bordley, Mr. Fontello, Mr. Workman, and himself to discuss the advantages and disadvantages of a bench trial versus a jury trial.[120] He denied trying to sway Mr. Bordley one way or the other, testifying, "so I explained to Mr. Bordley that it's his choice, he gets to make that choice, and I can't tell him what to do, I can't even advise him what to do."[121] Trial Counsel did not recall having a vote amongst the four men to decide whether to proceed with a bench trial.[122] He remembered Mr. Bordley did not make a final decision on waiving his right to a jury trial until the morning of trial.[123]

Trial Counsel testified his practice regarding documenting meetings with clients involved having his investigators attend and take notes.[124] One of those investigators tasked with memorializing the meetings with Mr. Bordley, Mr.

---

[119] D.I. 167, "Affidavit by Defendant's Trial Attorney in Response to Bordley's Rule 61 Claim of Ineffective Assistance of Counsel." (Mar. 7, 2024).

[120] Tr of Ev. Hr'g at A16.

[121] Id. at A19.

[122] Id. at A21-22.

[123] Id. at A22.

[124] Id. at A9-10.

22

Fontello, testified he remembered the meeting wherein they discussed whether to opt for a bench trial.[125] As Mr. Fontello remembers it, Trial Counsel "recommended a judge trial."[126] Mr. Fontello testified:

> [Trial Counsel] explained that he had a relationship with the judge. In fact, he had a social type of relationship, and he didn't go into particulars, with the judge and that he could get better judgments, meaning more evidence in, I would believe is what he was talking about. And with this [sic], I guess it was left at that. That was all that was basically said.[127]

Mr. Fontello could not recall specifics regarding Trial Counsel's "social relationship" with the trial judge, but thought Trial Counsel "said they associated in a social manner outside the courtroom."[128] After suggesting a bench trial would be better because of his relationship with the trial judge, Trial Counsel proposed a vote.[129] Mr. Fontello stated Trial Counsel, Mr. Bordley, and Mr. Workman voted in favor of a bench trial, while Mr. Fontello voted for a jury trial.[130] Mr. Fontello

---

[125] Id. at B10.

[126] Id. at B13.

[127] Id.

[128] Id. at B14.

[129] Id. at B13-14.

[130] Id. at B15.

23

believed Trial Counsel's remarks about a relationship with the judge swayed both Mr. Workman and Mr. Bordley to vote in favor of a bench trial.[131]

Mr. Bordley testified he originally planned on exercising his right to a jury trial.[132] He remembered Trial Counsel advising him that:

> He was close friends with the judge[,] and he felt as though the trial would be more in our favor due to their personal relationship. No [sic] only that but, also, as he said, certain evidence would be able to get in easier without certain parameters, I guess, with that judge.[133]

Mr. Bordley could not recall any other reason Trial Counsel provided for recommending a bench trial.[134] In his recollection of the vote, Mr. Bordley voted for a jury trial.[135] Mr. Bordley testified he remained unsure of how to proceed after the vote, but ultimately Trial Counsel convinced him to waive his right to a jury trial.[136]

---

[131] Id. at B16.

[132] Id. at A61.

[133] Id. at A61-62.

[134] Id. at A63-64.

[135] Id. at A-64 ("So we had to vote[,] and it was barely split. I voted for a jury. And one of the investigators, I believe it was Mr. Fontello, said we should go to trial by jury as well. And Mr. Workman agreed with [Trial Counsel].").

[136] Id. at A64-65.

24

Mr. Workman averred, "Trial Counsel was in favor of going to [a] bench trial with the judge assigned to this case."[137] He could not recall what exactly Trial Counsel said, only that whatever he said convinced Mr. Workman to vote for a bench trial.[138] Mr. Workman reviewed his notes from that meeting, and found a note "under the topic of 'Esq. Discussing Bench vs. Jury[,]' I started writing a sentence, 'Judge is,' but stopped and then drew a line through those two words."[139] Mr. Workman could not recall what prompted him to write those words, but recalled, "I believe whatever [Trial Counsel] was specifically expressing to Bordley about the judge shouldn't have been documented in our notes."[140]

During oral argument, the State conceded that, "based on the testimony and based on the parties' credibility," Trial Counsel likely did state his social relationship with the trial judge would lead to favorable decisions.[141] The Court agrees. Mr. Bordley and Mr. Fontello recall similar versions of Trial Counsel's advice regarding a bench trial. Mr. Workman cannot recall Trial Counsel's advice, beyond the fact that Trial Counsel did not want it preserved in Mr. Workman's notes. Further, Trial

---

[137] D.I. 182 at 2.

[138] Id.

[139] Id.

[140] Id.

[141] Tr. of OA at 52-53.

Counsel's testimony that he did not advise Mr. Bordley one way or the other, and that he did not recall any vote on the matter, lacks credibility.[142]

Clearly, Trial Counsel representing that he and the trial judge were friends – and thus the trial judge would likely provide more favorable rulings – falls below an objective standard of reasonable representation. If Trial Counsel truly believed that his relationship with a judicial officer would impact a particular case, he possessed an ethical obligation to request the trial judge's recusal. If Trial Counsel *did not* believe it, his statements served only to mislead Mr. Bordley into waiving his right to a jury trial for reasons known only to Trial Counsel. Either way, Trial Counsel's representation fell short of reasonable, and affected Mr. Bordley's ability to make an intelligent waiver of that right.

Having satisfied the performance prong, Mr. Bordley must also satisfy the prejudice prong. The Delaware Supreme Court recently addressed the prejudice prong in the context of waiving the right to a jury trial in Wheeler v. State. There, trial counsel advised a defendant that he should opt for a bench trial because

---

[142] As to Trial Counsel's credibility, Mr. Bordley introduced into the record decisions regarding Trial Counsel's disciplinary record. See Reply to State's Resp. After Evidentiary Hr'g at 8-9 (citing Matter of Beauregard, 189 A.3d 1236 (Del. 2018); In the Matter of a Member of the Bar of the Supreme Court of Delaware: Andre M. Beauregard, Respondent, 291 A.3d 192 (Del. 2023)). The Court finds Trial Counsel's credibility lacking based on the testimony of the witnesses and the evidence available in the record, aside from Trial Counsel's disciplinary history. Thus, the Court declines to delve into a discussion of Trial Counsel's conduct in unrelated cases, and how that conduct should impact a determination of his credibility in *this* case.

evidence that might otherwise be inadmissible would at least be presented to the trial judge when counsel made evidentiary arguments.[143] Trial counsel conceded the trial judge could not consider such inadmissible evidence, but explained he would take any advantage he could try to manufacture at trial.[144]

The Wheeler court ultimately deferred to the factual determinations of the lower court – which determined the defendant's testimony lacked credibility – and found the defendant failed to satisfy the performance prong of Strickland.[145] Nevertheless, the Wheeler court proceeded to analyze the prejudice prong to establish the correct standard this Court should apply.[146] It explained, "[w]hen a criminal defendant waives an important constitutional trial right because of the ineffective assistance of counsel, a defendant shows that he has been prejudiced when he demonstrates a reasonable probability that he would have exercised that right in the absence of counsel's ineffective assistance."[147]

---

[143] Wheeler, 296 A.3d at 371. (Mr. Bordley notes Trial Counsel also served as trial counsel in Wheeler).

[144] Id.

[145] Id. at 373.

[146] Id. at 377.

[147] Id.

Thus, Mr. Bordley must show that, but for Trial Counsel's deficient advice, a reasonable probability exists he would have exercised his right to a jury trial. Mr. Bordley testified that, before hearing Trial Counsel's deficient advice, he intended to exercise his right to a jury trial.[148] Mr. Fontello recalled Mr. Bordley being persuaded by Trial Counsel to proceed with a bench trial.[149] Mr. Workman averred that, whatever Trial Counsel said on the matter, it persuaded Mr. Bordley to vote for a bench trial.[150] Taken together, those recollections suggest that Mr. Bordley would have exercised his right to a jury trial if Trial Counsel had not advised him otherwise. Accordingly, Mr. Bordley has satisfied the prejudice prong as prescribed by Wheeler.

The State's arguments to the contrary are unavailing. First, the State points to the colloquy between Mr. Bordley and the trial judge in which Mr. Bordley affirmed his knowing and voluntary decision to waive his right to a jury trial.[151] Trial Counsel's suggestion that Mr. Bordley would receive favorable rulings because of his attorney's friendship with the trial judge, however, falls so far below reasonable representation that the standard colloquy the trial judge employed did not address such a possibility. The trial judge did not inquire, for example, whether Mr. Bordley

---

[148] Tr. of Ev. Hr'g at A61.

[149] Id. at B16.

[150] D.I. 182 at 2.

[151] Tr. of OA at 53.

28

expected the trial judge to rule in his favor because of a social relationship with Trial Counsel.

The State contends Mr. Bordley's assertion that he would have exercised his right to a jury trial lacks credibility.[152] Certainly, Mr. Bordley's testimony that he voted for a jury trial does not align with Mr. Fontello's memory. Mr. Fontello and Mr. Workman both suggested, however, that Mr. Bordley had not made up his mind before the vote occurred. Both investigators acknowledged that Trial Counsel attempted to persuade Mr. Bordley to opt for a bench trial. Logically, persuasion would not be necessary if Mr. Bordley intended to pursue a bench trial all along.

The State further asserts that, although unethical, Trial Counsel's advice "was not so unreasonable that it bore no relationship to a valid defense strategy."[153] The State provided several cases in which Trial Counsel obtained favorable outcomes for his clients in bench trials in front of the same trial judge.[154] The State posits, "[a]dvice to [Mr.] Bordley that [Trial Counsel] believed he could get favorable rulings in a bench trial with this judge was not unreasonable."[155] Setting aside the

---

[152] Id. at 57.

[153] "State's Supplement After Evidentiary Hearing in Response to Defendant's Amended Motion for Postconviction Relief" at 14.

[154] Id. at 12.

[155] Id.

29

ethical considerations of Trial Counsel's advice, prior favorable results with the same trial judge are not indicative of a strategic reason to pursue a bench trial for Mr. Bordley's specific case. Moreover, "although strategy satisfies the Strickland requirements, '[t]he relevant question is not whether counsel's choices were strategic, but whether they were *reasonable*.'"[156] Suggesting that Trial Counsel's alleged friendship with the trial judge may have created a strategic reason for pursing a bench trial does not make Trial Counsel's advice reasonable.

The record before the Court shows Trial Counsel advised Mr. Bordley to waive his right to a jury trial because Trial Counsel enjoyed a social relationship with the trial judge, which he intimated would lead to favorable decisions. The record further shows that Trial Counsel did not provide other reasons for recommending a bench trial – especially given that Trial Counsel testified "I can't even advise him what to do."[157] Mr. Bordley's uncontradicted testimony evidences he would have opted for a jury trial absent Trial Counsel's advice. Both investigators recall Trial Counsel persuading Mr. Bordley to proceed to a bench trial. Accordingly, Mr. Bordley has shown both that Trial Counsel's advice fell below an objectively reasonable standard, and, that, but for Trial Counsel's advice, Mr. Bordley would

---

[156] Green, 238 A.3d at 174 (quoting Flores-Ortega, 528 U.S. at 481) (emphasis added).

[157] Tr. of Ev. Hr'g at A19.

have exercised his constitutional right to a jury trial. Mr. Bordley has satisfied both prongs of the Strickland analysis as to this claim.

**D.    Trial Counsel's performance during trial fell below an objective standard of reasonableness and prejudiced Mr. Bordley**

Mr. Bordley's second claim focuses on Trial Counsel's performance during the bench trial. First, he alleges Trial Counsel failed to introduce the cooperation agreements signed by his codefendants to attack their credibility.[158] Second, he argues Trial Counsel should have requested the trial judge apply the standard jury instruction for accomplice testimony when he considered the credibility of the codefendants.[159] Third, he asserts Trial Counsel "was ineffective for failing to introduce eyewitness Alexis Golden's statements to the investigator."[160] Collectively, Mr. Bordley asserts these mistakes by Trial Counsel deprived him of a fair trial.[161] The Court will address each of these arguments in turn, beginning with Ms. Golden's statement.

Trial Counsel's questioning of Ms. Golden elicited the inconsistencies in her statements – specifically, she told investigators she could not identify the shooter

---

[158] Appeal from Commissioner's Findings of Fact and Recommendations at 26.

[159] Id.

[160] Id.

[161] Id.

because she could not see in the dark.[162]  Mr. Bordley argues Trial Counsel should have introduced her statements to the investigators under 11 Del. C. § 3507(a) because those statements provided evidentiary value beyond showing Ms. Golden offered conflicting statements.[163]  Applying the deferential standard of Strickland, however, the Court cannot find Trial Counsel's chosen route to discredit Ms. Golden's testimony falls below an objective standard of reasonableness.

Similarly, the Court does not find Trial Counsel's failure to request the trial judge apply the standard instruction for accomplice testimony fell below an objective standard of reasonableness.  Certainly, the safer path would have been for Trial Counsel to ensure the trial judge properly considered the accomplice testimony of Ms. Braunskill and Mr. Harmon using the instruction set forth in Bland v. State.[164] Trial Counsel's explained he did not do so because "the Court never scheduled a prayer conference prior to its verdict."[165]  That excuse does not exemplify best practices, but Strickland does not require best practices – only reasonable ones.  The Court does not find Trial Counsel's belief that the trial judge would correctly apply the law regarding accomplice testimony – without an explicit Bland instruction to

---

[162] Am. Mot. for Postconviction Relief at 61.

[163] Id. at 64.

[164] Bland v. State, 263 A.2d 286, 289 (Del. 1970).

[165] D.I. 167 at 4.

32

himself – falls below an objective standard of reasonableness. Further, Mr. Bordley has not provided any evidence that the trial judge failed to consider properly and in context the accomplice testimony of Mr. Bordley's codefendants.

Turning to Mr. Bordley's final argument, the State does not dispute Trial Counsel failed to introduce evidence of Mr. Harmon and Ms. Braunskill entering into cooperation agreements with the State. Trial Counsel's justification for his inaction[166] – amplified by the State in its filings[167] and adopted by the Report – relied on the mistaken belief that evidence of those agreements did not need to be introduced into evidence because the trial judge knew of their existence independent of the trial record. The State conceded its mistake during oral argument, stating:

> I had argued that the judge would have been aware of those cooperation agreements because he took the pleas and he sentenced one of the defendants prior to trial in this case. But [Postconviction Counsel] is correct, that is not information that would have been considered by the judge because it would have been outside the record. So to the extent the commissioner – [sic] I just would ask the Court not to make that finding in your decision.[168]

As the finder of fact, a trial judge in a bench trial cannot consider evidence outside the trial record. The trial judge explained as much in his decision, when he

---

[166] Tr. of Ev. Hr'g at A40-42.

[167] State's Resp. to Def.'s Am. Mot. for Postconviction Relief at 23.

[168] Tr. of OA at 42.

33

noted he would consider the credibility of witnesses based, in part, on "all other facts and circumstances **shown by the evidence** which [would] affect the believability of the testimony."[169] Not only did Trial Counsel fail to introduce the cooperation agreements based on a misunderstanding of the law, he failed to impeach Ms. Braunskill's testimony when she testified she never signed a cooperation agreement.[170] Trial Counsel possessed the opportunity to undermine the credibility of two key witnesses for the State – two of three eyewitnesses and Mr. Bordley's alleged co-conspirators – and failed to do so for no discernable tactical reason. In this way, Trial Counsel's conduct fell below an objective standard of reasonableness.

As to the prejudice prong, the trial judge's conclusion following the bench trial relied heavily on the testimony of Ms. Braunskill and Mr. Harmon.[171] Evidence existed showing those two witnesses were incentivized to testify against Mr. Bordley because of their respective cooperation agreements. The trial judge could not consider that evidence, however, because Trial Counsel never placed that evidence into the record. A retrospective analysis of whether this additional impugnment to Ms. Braunskill's and Mr. Harmon's credibility – in addition to their inconsistent

---

[169] State v. Bordley, 2018 WL 3966456, at *1 (Del. Super. Aug. 15, 2018) (emphasis added), aff'd, 224 A.3d 575 (Del. 2020).

[170] State's Resp. to Def.'s Am. Mot. for Postconviction Relief at 22.

[171] State v. Bordley, 2018 WL 3966456, at *1-2.

testimony and their status as codefendants – would have impacted the verdict poses a difficult question.

To demonstrate prejudice, Mr. Bordley must show that, but for Trial Counsel's failure to introduce the cooperation agreements, a reasonable probability exists that the results of the trial would have been different.[172] "A reasonable probability of a different result means a 'probability sufficient to undermine confidence in the outcome,' a standard lower than 'more likely than not.'"[173] Given the importance of Ms. Braunskill and Mr. Harmon to the State's case against Mr. Bordley, the Court finds a reasonable probability exists that an additional attack on their credibility would have affected the outcome of the trial. Thus, Trial Counsel's deficient performance prejudiced Mr. Bordley.

## V.    Conclusion

Trial Counsel gave improper advice to Mr. Bordley based on Trial Counsel's suggestion that his social relationship with the trial judge would induce favorable rulings. That advice fell below an objective standard of reasonableness, and caused Mr. Bordley to waive his constitutional right to a jury trial. Further, Trial Counsel's deficient performance during the trial undermines the Court's confidence in the

---

[172] Strickland, 466 U.S. at 694.

[173] Starling v. State, 130 A.3d 316, 325 (Del. 2015) (quoting Strickland, 466 U.S. at 693-94).

outcome. Accordingly, Mr. Bordley has satisfied both prongs of the <u>Strickland</u> analysis. Mr. Bordley's Amended Motion for Postconviction Relief is **GRANTED**.

**IT IS SO ORDERED.**

_____
Reneta L. Green-Streett, Judge